```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA
```

BOARD OF COMMISSIONERS OF                     CIVIL ACTION
THE PORT OF NEW ORLEANS, ET
AL

VERSUS                                        NO: 07-6608

LEXINGTON INSURANCE COMPANY,                  SECTION: J(2)
ET AL

**ORDER AND REASONS**

Before the Court is Defendants Universal Maritime Service Corporation ("UMSC"), Maersk, Inc. ("Maersk"), and APM Terminals North American, Inc.'s ("APMT") **Motion for Partial Summary Judgment (Rec. Doc. 53).** These Defendants seek to dismiss Plaintiff's, the Board of Commissioners of the Port of New Orleans' ("Dock Board"), claims alleging breach of lease provisions requiring the repair, replacement, and/or restoration of damages caused by Hurricane Katrina to a facility leased by Plaintiff to Defendants. Defendants argue that such claims are precluded as per the Lease and Lease Cancellation Agreement entered into between the parties.

This motion, which is opposed, was set for hearing on February 20, 2008 on the briefs. Upon review of the record, the

memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that Defendants' motion should be granted.

## Background Facts

Prior to Hurricane Katrina, the Dock Board leased to UMSC a tract of land and improvements located in eastern New Orleans in which it conducted maritime-related business.  As a result of Hurricane Katrina, the leased premises sustained significant damage that rendered the facility unusable by UMSC.  Pursuant to the lease agreement, UMSC had the option in such an event to terminate the lease, which was done.  At this point, a "Lease Cancellation Agreement" was entered into by the Dock Board and UMSC which effectively terminated the lease on April 15, 2006. The Lease Cancellation Agreement required a "Joint Move-out Survey" ("Survey")  whereby both the Dock Board and UMSC assessed repairs that UMSC needed to make to the property.  According to the Survey, only the fender system needed repair at cost of $1,972.92, which was paid by USMC to the Dock Board.  No other repair was identified.

The Dock Board subsequently filed suit in Civil District Court, Parish of Orleans, against UMSC, Maersk, and APMT,[1] alleging that UMSC breached the lease agreement by failing to

---

[1] Maersk and APMT are two of UMSC's parent or affiliated companies.  UMSC is wholly owned by APMT, which is wholly owned by Maersk.

2

repair, replace, and restore the damages to the facility. Defendants removed to this Court, and now move for partial summary judgment.

## The Parties' Arguments

UMSC argues that the Dock Board is precluded from claiming additional repairs not identified in the Survey, as set forth in the Cancellation Agreement, and that by paying for the repair of the fender system, UMSC has satisfied its obligations to repair. In other words, under the express language of the Lease Cancellation Agreement, the Dock Board's right to assert a claim for damages to the leased premises is limited, among other ways, to those items identified by the parties in the Survey, as any other claims the Dock Board may have had with regard to the repair of damages to the leased premises were "released" by the Dock Board in the Lease Cancellation Agreement.[2] UMSC paid the amounts identified in the Survey to the Dock Board and thus satisfied all obligations it had under the Lease Cancellation Agreement. Therefore, according to Defendants, as the Lease Cancellation Agreement is the contract and law between the parties, this Court should enforce the contract as written and

---

[2] In the Lease Cancellation Agreement, the Dock Board further "discharged" and "covenanted not to sue" USMC with regard to any other damage that might exist with respect to the leased premises, but not identified by the parties within a precise amount of time and in the Survey.

dismiss the Dock Board's claims against UMSC, Maersk, and APMT.[3]

In opposition, the Dock Board argues that the Lease Cancellation Agreement expressly incorporated the responsibility of repairing the damage caused by Hurricane Katrina using language that reaffirms the terms of the original lease.  Under the original lease, UMSC was responsible for "maintenance and repair" under section 15.[4]  UMSC was also responsible for any "loss, damage, or destruction," however caused, under section 19, which is distinguishable from the obligation set forth in section 15.[5]

---

[3] According to Defendants, the "single business enterprise" is the sole allegation that Plaintiff makes against Maersk and APMT.  Therefore, their only liability is derivative of UMSC, and should any claims against UMSC be dismissed, they should likewise be dismissed against Maersk and APMT.

[4] Section 15 provides:

> 15.  MAINTENANCE AND REPAIR
>
> (A)(I) Lessee's responsibility
>
> Lessee shall be responsible for and shall at its cost, risk and expense bear, perform, and pay all costs of maintenance and repairs necessary to the Leased Premises, specifically including the fender system at the wharf, attributable to use, acts, or operations of Lessee . . . .  Lessee agrees that, at the termination of this Lease, it shall restore the Leased Premises to the same condition as at the commencement of the Lease, normal wear and tear excepted . . . .

(Lease, Rec. Doc. 53-4, p. 9).

[5] Section 19 provides in pertinent part:

> 19. LOSS, DAMAGE AND DESTRUCTION

According to the Dock Board, the Lease Cancellation

\* \* \*

>   (B) Except as provided herein, Lessee agrees that it shall at its own cost, risk and expense promptly and with due diligence repair, replace, or restore any and all of the Leased Premises which may become the subject of loss, damage or destruction, however caused.  Lessee shall obtain the written consent of the Board to the plans for any such repairs, replacement, or restorations, and Board's consent shall not be unreasonably delayed, conditioned or denied.  The proceeds derived from insurance policies and other amounts recovered from third parties shall be applied toward such repair, replacement or restoration.  Board agrees to make such insurance proceeds and amounts received from third parties available to Lessee to make progress payments to Lessee's suppliers and contractors working on such repair, replacement or restoration.  In the event that the loss, damage or destruction was not caused by Lessee, its employees, agents, customers, contractors or representatives, and the Leased Premises become unusable for the purposes of this Lease, then the rent shall be adjusted equitably for the period the Leased Premises are not usable.
>
>   (C) Lessee shall have the option to terminate this Lease in the event of any loss, damage or destruction of the Leased Premises which renders them substantially unusable for the purposes of this Lease or Lessee's operations hereunder, and such loss has a substantial adverse effect on Lessee's business.  If the Lessee is responsible for the said loss, damage, or destruction of the Leased Premises, then Lessee shall be liable to Board for the damages caused and for rent until the Leased Premises can be repaired or for rent for one year after the date of the casualty, whichever occurs earlier . . . . . In the event said loss, damage, or destruction shall have been covered by insurance, before Lessee may exercise its option to terminate this Lease as set out in this Subsection, Lessee shall pay over to Board all such insurance proceeds which Lessee has been paid or for which Lessee has or may have a claim and any deductibles Lessee maintained under the terms of the insurance policies.

(Lease, Rec. Doc. 53-4, p. 11).

Agreement specifically recognizes that UMSC is still obligated under section 19 of the lease, contrary to UMSC's argument that its responsibilities under section 19 were eliminated by the execution of the Cancellation Agreement (i.e., that UMSC's responsibilities were limited to the items identified in the Survey).  Instead, the items identified in the Survey and the release contained therein relate solely to those items for which UMSC was responsible for repair under section 15, the "maintenance and repair" section of the lease.[6]  In other words, the release provision set forth in the Cancellation Agreement had nothing to do with UMSC's responsibilities under section 19, to repair any "loss, damage, or destruction," however caused.  Furthermore, section 4 of the Cancellation Agreement specifically states that section 19 of the Lease is incorporated into the Cancellation Agreement.  Thus, according to the Dock Board, section 19(B) still holds UMSC liable for the damages to the

---

[6] The relevant language of the Lease Cancellation Agreement provides:

> 3.(c). For the specific items identified by [the Dock] Board pursuant to Section 3(h) below, [UMSC] shall be responsible for all repairs to the Leased Premises as detailed in Section 15 ("Maintenance and Repair") of the Lease, hurricane damage excepted.

The Dock Board argues that section 3(c) of the Cancellation Agreement specifically excepted damages caused by Hurricane Katrina from those responsibilities released pursuant to section 3(h) of the Cancellation Agreement, which details the Survey procedure.

leased premises.

In response, UMSC argues that the Cancellation Agreement is properly read in the context of section 19(C) of the Lease, which provides for termination of the lease where the damage to the leased premises is so extensive as to render it "substantially unusable . . . ," not in the context of section 19(B) as the Dock Board argues.  Reasoning as follows, UMSC points out that section 19(B) begins with the introductory clause, "Except as provided herein."  According to UMSC, this clause acknowledges that in the absence of an exception, section 19(B) applies.  However, termination of the lease as a result of damage that renders the facility unusable is such an exception contemplated under section 19(C).  Therefore, as stated in section 19(C), UMSC is not responsible for the repair because the Lessee (UMSC) was not the cause of the damage.  Under these circumstances, UMSC argues that it is no longer obligated to repair the damages, but instead is obligated to deliver to the Dock Board "all such insurance proceeds which Lessee has been paid or for which Lessee has or may have a claim and any deductibles Lessee maintained."  As UMSC's insurer has already deposited the sum of $2,261,526.00 into the registry of the Court for damages caused by Hurricane Katrina, UMSC asserts all that remains to be decided by the Court is the allocation of such proceeds between UMSC and the Dock

Board.[7]

## Discussion

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

A contract has the effect of law between the parties. La. Civ. Code art. 1983. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. Civ. Code art. 2050. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."

---

[7] This assertion is based on section 19(G) of the lease, which states:

> (G) In the event of termination of this Lease pursuant to this Section, Lessee shall be entitled to receive from the insurance proceeds Lessee's insurable leasehold interest in those improvements on the Leased Premises approved by Board and paid for by Lessee . . . .

La. Civ. Code art. 2046.

The relevant portion of the Lease Cancellation Agreement provides:

> [The Dock] Board and UMSC do hereby agree as follows:
>
> 1. The Lease is hereby cancelled as of the Effective Date.  <u>Other than specifically set forth herein, [UMSC] shall have no further rights or obligations with respect to the Leased Premises.</u>
>
> * * *
>
> 3.(c). For the specific items identified by [the Dock] Board pursuant to Section 3(h) below, [UMSC] shall be responsible for all repairs to the Leased Premises as detailed in Section 15 ("Maintenance and Repair") of the Lease, hurricane damage excepted.
>
> * * *
>
> 3.(h). Within ten (10) days after the Effective Date, [Dock] Board and [UMSC] shall participate in a joint move-out survey of the condition of the Leased Premises as of the Effective Date.  The findings of the survey shall be in writing, dated and jointly accepted in writing by the parties.  [The Dock] Board shall have sixty (60) days after the date of the survey to identify to [UMSC] in writing any specific items that [Dock] Board considers the responsibility of [UMSC] to repair.  [UMSC] shall be responsible for such repairs to the extent that it would have been responsible for the same under the Lease.  After [UMSC]'s completion of such repairs if any, <u>[the Dock] Board forever discharges, releases and covenants not to sue [UMSC] and its successors and assigns for any responsibility for repairs related to the Leased Premises.</u>
>
> 4. This Cancellation Agreement notwithstanding, Board and Lessee acknowledge that they have certain rights and obligations pursuant to Section 19 ("Loss, Damage and Destruction") . . . of the Lease.  Therefore, for the purpose of damage to the Leased Premises which under the Lease was required to be insured, the parties agree that Section 19 ("Loss, Damage and Destruction") . . . of the Lease are incorporated herein and made

```
        part of this Cancellation Agreement . . . .
```
(Lease Cancellation Agreement, Rec. Doc. 53-4, pp 38-39) (Emphasis added).

In accordance with section 3(h) of the Lease Cancellation Agreement, the Survey did take place and was accepted and signed by both the Dock Board and UMSC.  In the Survey, the Dock Board only identified damages totaling $1,972.92 for "minor fender system damages" which the Dock Board considered the responsibility of UMSC to repair.  UMSC has since paid this amount to the Dock Board.  Pursuant to the express language of the Lease Cancellation Agreement, the Dock Board's right to assert a claim for damages to the leased premises was released at this point.  See section 3(h) of the Lease Cancellation Agreement.

While section 4 of the Lease Cancellation Agreement does incorporate section 19 of the lease into the Cancellation Agreement, this Court determines that section 19(C) rather than section 19(B) controls.  Under section 19 of the lease, the lessee is clearly required, in part (B), to "repair, replace, or restore any and all of the Leased Premises which may become the subject of loss, damage or destruction, however caused." (Lease, Rec. Doc. 53-4, p. 9).  But this does not mean that the lessee is responsible for any and all damage to the facility under all circumstances.  There are exceptions to this responsibility, as

evidenced by the introductory clause of 19(B): "Except as provided herein," one of which is set forth in section 19(C). Section 19(C) allows for the lessee to terminate the lease if the facility becomes unusable, as long as the lessee was not the cause of the damage or destruction that rendered it unusable. Giving effect to the express exception found at the beginning of Section 19(B) recognizes that, in terminating the lease, the parties were proceeding under section 19(C), which, as generally acknowledged by Section 4 of the Cancellation Agreement, created a completely different set of rights and obligations than those specified by section 19(B).[8]  Accordingly,

**IT IS ORDERED** that Defendants' **Motion for Partial Summary Judgment (Rec. Doc. 53)** is hereby **GRANTED.**

---

[8] This Court finds persuasive UMSC's argument that in the event of termination, there are express provisions dealing with insurance, which are set forth <u>exclusively</u> in section 19(C), namely, that the lessee must pay over to the Dock Board the insurance proceeds which lessee has been paid.  Therefore, the bargain of the lease is that, upon termination due to catastrophic loss or destruction of the leased premises unrelated to the lessee's fault, the lessee is relieved of its repair obligation by delivering to the Dock Board the insurance proceeds associated with such damages.  If the dual obligations of both repairing the damage and turning over the insurance proceeds were imposed upon the lessee, there would be an unjustified windfall in favor of the Dock Board.

New Orleans, Louisiana, this 27th day of February, 2008.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE