UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS, ET AL | CIVIL ACTION |
| VERSUS | NO: 07-6608 |
| LEXINGTON INSURANCE COMPANY, ET AL | SECTION: J(2) |

### ORDER AND REASONS

Before the Court is Plaintiff Board of Commissioners of the Port of New Orleans's ("Dock Board") **Motion to Alter or Amend Judgment (Rec. Doc. 71)**. The Dock Board seeks an order amending this Court's order granting Defendants Universal Maritime Service Corp.'s ("UMSC") and APM Terminals North America, Inc. ("APMT") Motion for Partial Summary Judgment (Rec. Doc. 62).

This motion, which is opposed, was set for hearing on April 2, 2008 on the briefs. Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that Plaintiff's motion should be denied.

### Background Facts

Prior to Hurricane Katrina, the Dock Board leased to UMSC a

tract of land and improvements located in eastern New Orleans in which it conducted maritime-related business ("leased premises"). As a result of Hurricane Katrina, the leased premises sustained significant damage that rendered the facility unusable by UMSC. Pursuant to the lease agreement, UMSC had the option in such an event to terminate the lease, which was done.  At this point, a "Lease Cancellation Agreement" was entered into by the Dock Board and UMSC which effectively terminated the lease on April 15, 2006.  The Lease Cancellation Agreement required a "Joint Move-out Survey" ("Survey") whereby both the Dock Board and UMSC assessed repairs that UMSC needed to make to the property. According to the Survey, only the fender system needed repair at cost of $1,972.92, which was paid by USMC to the Dock Board.  No other repair was identified.

    The Dock Board subsequently filed suit in Civil District Court, Parish of Orleans, against UMSC, APMT,[1] and others, alleging that UMSC breached the lease agreement by failing to repair, replace, and restore the damages to the facility. Defendants removed to this Court and subsequently moved for partial summary judgment.

    This Court granted UMSC and APMT's Motion for Partial Summary Judgment dismissing the Dock Board's claims alleging

---

[1] Maersk and APMT are two of UMSC's parent or affiliated companies.  UMSC is wholly owned by APMT, which is wholly owned by Maersk.

2

breach of the lease provisions requiring the repair, replacement, and/or restoration of damages caused by Hurricane Katrina to the leased premises based on a finding that such claims were precluded as per the lease and the lease cancellation agreement entered into between the parties.  See Rec. Doc. 62.  Plaintiffs then moved for reconsideration of that Order.

## **Discussion**

This Court previously determined that the Defendant lessee did not have a duty to repair the leased premises that were damaged due to Hurricane Katrina once the lease was terminated pursuant to section 19(C) of the lease between the parties. Specifically, this Court determined that:

> While . . . the Lease Cancellation Agreement does incorporate section 19 of the lease into the Cancellation Agreement, this Court determines that section 19(C) rather than section 19(B) controls. Under section 19 of the lease, the lessee is clearly required, in part (B), to "repair, replace, or restore any and all of the Leased Premises which may become the subject of loss, damage or destruction, however caused." (Lease, Rec. Doc. 53-4, p. 9).  But this does not mean that the lessee is responsible for any and all damage to the facility under all circumstances.  There are exceptions to this responsibility, as evidenced by the introductory clause of 19(B): "Except as provided herein," one of which is set forth in section 19(C). Section 19(C) allows for the lessee to terminate the lease if the facility becomes unusable, <u>as long as the lessee was not the cause of the damage or destruction that rendered it unusable.</u>[2]  Giving effect to the

---

[2] The Dock Board takes issue with this clause.  Upon further consideration, this Court agrees that the underlined portion is a partial misstatement of the contractual provisions. As such, the sentence should read "Section 19(C) allows for the

>       express exception found at the beginning of Section
>       19(B) recognizes that, in terminating the lease, the
>       parties were proceeding under section 19(C), which, as
>       generally acknowledged by Section 4 of the Cancellation
>       Agreement, created a completely different set of rights
>       and obligations than those specified by section 19(B).

In other words, the Court found that sections 19(B) and 19 (C) act independently of each other and set forth different rights and responsibilities.  This Court finds no reason to depart from its prior ruling.

   Furthermore, in so ruling, this Court noted that:

>       This Court finds persuasive UMSC's argument that in the
>       event of termination, there are express provisions
>       dealing with insurance, which are set forth <u>exclusively</u>
>       in section 19(C), namely, that the lessee must pay over
>       to the Dock Board the insurance proceeds which lessee
>       has been paid.  Therefore, the bargain of the lease is
>       that, upon termination due to catastrophic loss or
>       destruction of the leased premises unrelated to the
>       lessee's fault, the lessee is relieved of its repair
>       obligation by delivering to the Dock Board the
>       insurance proceeds associated with such damages.  If
>       the dual obligations of both repairing the damage and
>       turning over the insurance proceeds were imposed upon
>       the lessee, there would be an unjustified windfall in
>       favor of the Dock Board.

---

lessee to terminate the lease if the facility becomes unusable, <u>and so long as the lessee was not the cause of the damage or destruction that rendered it unusable, the only obligation imposed on the lessee once the lease terminates is to turn over any insurance proceeds that the lessee has been paid.</u>

   As the Dock Board points out, the sentence as it currently reads rules out the possibility that a lessee who did cause the damage can terminate the lease, which is clearly erroneous.  Such a lessee <u>can</u> terminate the lease, but in doing so, the lessee "shall be liable to Board <u>for the damages caused</u> and for rent until the Leased Premises can be repaired or for rent one year after the date of the casualty, whichever occurs earlier."  See Lease, Rec. Doc. 53-4, Section 19(C), p. 9.

This Court still finds that argument persuasive despite the Dock Board's arguments to the contrary. The Dock Board argues that as a result of the Court's ruling, it is subjected to manifest injustice because it is relegated to whatever may be recoverable under the Lexington Insurance Company policy, and that Lexington has asserted multiple defenses which either limit or exclude coverage. The Dock Board further argues that allowing UMSC to escape its obligation will lead to a manifest injustice to the Dock Board because UMSC will not be held responsible for the shortfall between damages sustained at the leased premises (which the Dock Board estimates exceeds $9 million) and any amounts paid by UMSC's insurer.

However, such insurer defenses and the issue of whether the Defendants breached the lease by failing to carry insurance in the form and substance required by the contract were not and still are not currently before the Court. Accordingly,

**IT IS ORDERED** that the Dock Board's **Motion to Alter or Amend Judgment (Rec. Doc. 71)** is hereby **DENIED.** However, this Court's order dated February 27, 2008 (Rec. Doc. 92) is hereby **AMENDED** as set forth in footnote 2 of this Order.

New Orleans, Louisiana, this 6th day of August, 2008.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

5