```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
```

| | |
|---|---|
| **BOARD OF COMMISSIONERS OF THE** <br> **PORT OF NEW ORLEANS** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-6608** |
| **LEXINGTON INSURANCE COMPANY** <br> **ET AL** | **SECTION: J** |

## ORDER & REASONS

Before the Court is Plaintiff Board of Commissioners of the Port of New Orleans' ("Dock Board") **Motion to Alter or Amend Judgment of November 4, 2008** (Rec. Doc. 110). The Dock Board seeks clarification and/or amendment of the Court's order to include certain improvements listed in the 1973 Lease Amendment among those of which the Dock Board can claim ownership. Defendants Maersk Inc. and Universal Maritime Service Corp. ("Maersk/UMSC") oppose the motion.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

Prior to Hurricane Katrina, the Dock Board leased to UMSC a tract of land and improvements known as the France Road Terminal located in eastern New Orleans for maritime-related business. As a result of Hurricane Katrina, the leased premises sustained significant damage that rendered the facility unusable by UMSC. Pursuant to the lease agreement, UMSC exercised its option in

such an event to terminate the lease.  At this point, a "Lease Cancellation Agreement" was entered into by the Dock Board and UMSC which effectively terminated the lease on April 15, 2006. The Lease Cancellation Agreement required a "Joint Move-out Survey"  whereby both the Dock Board and UMSC assessed repairs that UMSC needed to make to the property.  According to the survey, only the fender system needed repair at a cost of $1,972.92, which USMC paid to the Dock Board.

The Dock Board subsequently filed suit in Civil District Court, Parish of Orleans, against UMSC, Maersk, and APM Terminals North America, Inc. ("APMT"),[1] alleging that UMSC breached the lease agreement by failing to repair, replace, and restore all damages to the facility.  Defendants removed to this Court, which granted UMSC's, Maersk's, and APMT's motion for partial summary judgment, finding that the Lease and Lease Cancellation Agreement only required the defendants to pay for damage that they themselves caused to the leased premises, and not all damages to the premises resulting from Hurricane Katrina.

After this initial partial summary judgment in favor of defendants, this Court ordered the parties to file all motions relating to "[w]hether the Dock Board, [UMSC, APMT, and/or Maersk] can claim the benefit of ownership of improvements that

---

[1]  Maersk and APMT are two of UMSC's parent or affiliated companies.  UMSC is wholly owned by APMT, which is wholly owned by Maersk.

2

were placed on the leased premises before October 1, 2003." (Rec. Doc. 86). Accordingly, the Dock Board and Maersk/UMSC filed cross-motions on the general issue of the right to claim ownership of leasehold improvements under the relevant lease provisions, and the concordant right to insurance proceeds on those improvements. These motions involved the provisions of two different leases, as well as an amendment to one of those leases, entered into between the Dock Board and various entities among the defendants over the course of nearly 30 years. This Court's order of November 4, 2008 denied the cross-motions in part, but granted the Dock Board's motion as it related to the Dock Board's "right to claim ownership of the 13 specific improvements made under paragraph 3 of the 1973 Amendment." Rec. Doc. 106, 40. The Dock Board now seeks clarification/amendment of this grant of partial summary judgment to include additional improvements of which the Dock Board can claim ownership.

The 1973 Amendment included provisions describing two different contracts for specific improvements to be constructed by Landis Construction Company, Inc. ("Landis") and A. Giambelluca Construction Co., Inc. ("Giambelluca"), respectively. The Landis contract - originally executed on May 16, 1972, and later revised by a change order on November 9, 1972 - called for $495,135 worth of improvements to the leased premises, including: (1) changes in the floor plan fo the first floor of the office

3

building; (2) the construction of a second story to the office building; (3) an additional truck scale; (4) sixty additional reefer outlets; and (5) three additional garage bays.  The Giambelluca contract - executed on December 19,1972 - called for construction of $196,727 worth of unspecified improvements.[2]  The pertinent provision of the 1973 Amendment at issue in the Dock Board's motion provides in paragraph 3 as follows:

> It is acknowledged and agreed by Sea-Land[3] that **of the work to be performed** for [the Dock Board] by [Landis], pursuant to its construction contract dated May 16, 1972, as same has been amended by the said Change Order No. 7, Revised November 9, 1972, and that **of the work to be performed** for [the Dock Board] by [Giambelluca], pursuant to the said construction contract executed by that company with [the Dock Board] on December 19, 1972, **the following work shall be performed solely for the account of Sea-Land** and with the intention that same (but not the underlying real estate) shall be the property of or the subject of ownership by Sea-Land upon completion . . ."

1973 Amendment, Rec. Doc. 90-6 at 6, ¶3 (emphasis added).  Immediately after this provision, the 1973 Amendment provides a list of 13 specified improvements (i.e. those improvements addressed in the Court's November 4th Order), with an aggregate value of $691,862.  Id.  However, the 13 specified improvements in the list do not include the improvements mentioned in the

---

[2] The provision describing the Giambelluca contract does not specifically enumerate which improvements are included in the $196,727, but does refer to an "Exhibit D" attached to the 1973 Amendment.  However, no such Exhibit D was included in the documents provided by the parties in this litigation.

[3] Sea-Land was subsequently acquired by Maersk.

4

description of the Landis contract, nor does the list reference the Giambelluca contract. After this list, the 1973 Amendment includes the language on which this Court's order of November 4th was based and which is also implicated in the present motion:

> In the event that such lease should not become of force and effect or in the event of termination of the lease, for any cause, the facilities and improvements **described in this paragraph** that are to be constructed **solely for the account of Sea-Land** shall then be and become the property of [the Dock Board], without any obligation on the part of the Board to pay Sea-Land either the cost or the value thereof and without the necessity of any documentation of title beyond the provisions of this agreement ....

1973 Amendment, Rec. Doc. 90-6 at 6, ¶3 (emphasis added). These provisions alone govern the parties' arguments in this motion.

## **THE PARTIES' ARGUMENTS**

The Dock Board argues that this Court's order granting its right to claim the 13 specific improvements listed in the chart on page 7 of the 1973 Lease Amendment ("1973 Amendment") should also have included the improvements described in the Landis and Giambelluca contracts discussed in the 1973 Amendment. Specifically, the Dock Board argues initially that the total value of the 13 listed improvements, $691,862, is the total value of the Landis And Giambelluca contracts added together ($495,135 + $196,727). As such, the Dock Board contends that all the improvements, including both the specifically enumerated list of

5

13 items as well as the 5 constructions associated with the Landis contract and the improvements associated with the Giambelluca contract, should have been included in this Court's November 4th order as improvements of which the Dock Board can claim ownership.

In opposition, Maersk/UMSC that the simple fact that the values of each contract add up to the total value of the 13 listed improvements does not support the Dock Board's position given the express terms of the 1973 Amendment.  Specifically, Maersk/UMSC note that ¶3 of the 1973 Amendment provides that "**of the work to be performed**" by Landis and Giambelluca, ¶3 only provides that "the following work shall be performed solely for the account of Sea-Land," and then specifically lists the 13 improvements on page 7.  Thus, Maersk/UMSC contend that "Paragraph 3 contemplated that *not all of the work to be performed by Landis and Giambelluca would be subject to its terms*" and that only the specific 13 listed improvements would be governed by the termination/title-vesting provision at the end of the paragraph.  Furthermore, Maersk/UMSC argues that the terms of ¶3 are *specifically limited* to "those facilities and improvements **described in [¶3].**" 1973 Amendment, Rec. Doc. 90-6 at 6, ¶3 (emphasis added).  Accordingly, since the specific improvements under the Landis and Giambelluca contracts are described in ¶1 of the 1973 Amendment, Maersk/UMSC argues that those improvements

were not intended to be subject to the termination/title-vesting provisions of ¶3.  Thus, Maersk/UMSC argue that this Court's Order of November 4th was proper in limiting the grant of the Dock Board's summary judgment motion to only the specifically listed 13 improvements in ¶3, and that the Dock Board's motion to amend/clarify should be denied because fact issues remain as to the right to claim ownership of the improvements under the Landis and Giambelluca contracts.

In response, the Dock Board contends that the "of the work to be performed" language was not intended to limit the applicability of the termination/title-vesting provision of the 1973 Amendent to the list of 13 improvements.  Rather, the Dock Board argues that the language was included in order to distinguish the work to be performed by Landis under the 1973 Amendment from work to be performed under the previous May16, 1972 contract with Landis for construction of other facilities for Sea-Land's use.  As such, the Dock board argues that the "of the work to be performed" language was meant to limit the termination/title-vesting provision of the 1973 Amendment to the construction work to be performed by Landis and Giambelluca under the 1973 Amendment, and not to limit that provision merely to the listed 13 improvements.  Thus the Dock Board argues that this clarifying language, along with the fact that the list of 13 improvements adds up in value to the amount of the two contracts,

indicates that the termination/title-vesting provision should apply to all improvements listed in the 1973 Amendment, both the 13 listed improvements and those described in the Landis and Giambelluca contracts.

To bolster this argument even further, the Dock Board notes that the improvements listed in the Landis contract include changes to a first floor floor plan, addition of a second floor, and three additional garage bays.  The Dock board argues that it would make no sense for the lessor to retain ownership of the first floor while its lessee took ownership of the second, or for the lessor to retain ownership of all the garage bays except for three retained by the lessee.  Thus, the Dock Board asserts that all the improvements in the list of 13 and in the Landis and Giambelluca contracts should have been included in this Court's grant of partial summary judgment.

Maersk/UMSC respond with a reiteration that the Dock Board's opinions on the intent behind the language in the 1973 Amendment cannot undo the plain language of the contract.  As such, because ¶3 indicates that "of the work to be performed . . . the following work shall be performed solely for the account of Sea-Land" and then specifically lists only the 13 improvements, only those 13 improvements are subject to the termination/title-vesting provision.  Furthermore, Maersk/UMSC note that the specific list of 13 improvements does not even mention anything

8

about any of the specific improvements described in the Landis contract.  Finally, Maersk/UMSC argue that Louisiana law expressly allows for different floors of the same building to be owned by different entities.  See La. Civ. Code Art. 492.  As such, Maersk/UMSC reiterate their contention that there are significant issues of material fact as to whether the Landis and Giambelluca contract improvements were subject to the termination/title-vesting provision of the 1973 Amendment.  Therefore, Maersk/UMSC argue that this Court's order of November 4, 2008 is proper as issued and should not be amended.

## DISCUSSION

**A.   Rule 59(e) Standard**

The Federal Rules of Civil Procedure do not expressly allow motions for reconsideration of an order. <u>Bass v. U.S. Dept. of Agric</u>., 211 F.3d 959, 962 (5th Cir. 2000). If such a motion is filed within 10 days it is considered under the standards of a Rule 59(e) Motion to Alter or Amend Judgment. <u>Tex. A&M Research Found. v. Magna Transp., Inc.</u>, 338 F.3d 394, 401 (5th Cir. 2003).

> A Rule 59(e) motion 'calls into question the correctness of a judgment.' [The Fifth Circuit Court of Appeals] has held that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment. Rather, Rule 59(e) 'serve[s] the narrow purpose of

> allowing a party to correct manifest errors of law
> or fact or to present newly discovered evidence.'
> Reconsideration of a judgment after its entry is an
> extraordinary remedy that should be used sparingly.

Templet v. HydroChem Inc., 367 F.3d 473, 478-79 (5th Cir. 2004) (citations omitted). Finally, "Rule 59(e) motions cannot be used to raise arguments that could, and should, have been made before the judgment issued." Marseilles Homeowners Condominium Ass'n Inc. v. Fidelity Nat. Ins. Co., ---- F.3d ----, 2008 WL 4150108, 4 (5th Cir. 2008).  Accordingly, this Court may properly decline to consider new arguments or new evidence on reconsideration where those arguments were available to the movant prior to the order.

### B.   The 1973 Amendment and the Parties' Claims

The provisions of the 1973 Amendment are ambiguous at best. While the Dock Board has presented an opinion as to the meaning and intent of the "of the work to be performed" language, that opinion in a memorandum in support of a motion to reconsider is not sufficient evidence of the parties' intent to allow for a decision on the issue.

Furthermore, while the Dock Board argues that it would not make any sense for Maersk/UMSC to retain ownership of the second floor of the office building while the Dock Board retained ownership of the first floor, Louisiana law specifically allows

for such a result.  La. Civ. Code Art. 492 (2008) ("Separate ownership of a part of a building, such as a floor, an apartment, or a room, may be established only by a juridical act of the owner of the entire building when and in the manner expressly authorized by law.").  In addition, and as a practical matter, this piecemeal separate ownership may very well make sense based on the nature of the lease between these parties.  As admitted by the Dock Board at its Rule 30(b)(6) deposition, the parties to the various lease instruments at issue in this case were unsure of which entities were the real parties in interest, and were also unsure as to how long Maersk would remain a tenant and/or economic presence at the leased property.  Thus, as part of the lease agreements, it is not illogical that each party would have negotiated to retain ownership of certain parts of the leased property depending on the duration of their tenancy.  For example, as to the second floor of the office building, Maersk (as Sea-Land) may have intended to retain ownership of the second floor alone as a means of negotiating leverage for future lease extensions.  Likewise, the Dock Board may have agreed to allow Maersk/Sea-Land to retain the second floor as a concession to ensure Maersk/Sea-Land's continued presence at the leased property.  Thus the separateness of ownership argument by the Dock Board is unavailing, and there remain material issues of fact as to the right to claim ownership of the Landis and

Giambelluca contract improvements.

Also, while the Dock Board's common sense argument that the total value of the 13 listed improvements adds up to the total cost of the two contracts is initially compelling, the plain language of the 1973 Amendment clouds the practicality of that position.  While the sum of the contract values and the 13 improvement values may be the same, that cannot clarify the ambiguous language of the contract.  Finally, there is no specific description anywhere in the 1973 Amendment of which specific improvements were included in the Giambelluca contract.  That in itself presents a material issue of fact that could not be determined on the summary judgment record.  Thus, there are and were material issues of fact on the summary judgment record as to whether the sum value of the two contracts and the 13 improvements is relevant to the interpretation of the plain language of the 1973 Amendment.

Finally, and perhaps most damaging to the Dock Board's position, is the fact that nowhere in the 13 listed improvements is there any mention of the 5 specific construction projects described in the Landis contract.  This is especially anomalous given the fact that those construction projects (i.e. the floor plan, second story, truck scale, reefer units, and garage bays) are such significant structures, and that they are in fact specifically described elsewhere in the contract.  Furthermore,

12

¶3 refers only to improvements "described in this paragraph," whereas the improvements in the Landis and Giambelluca contracts are described in ¶1.  Again, this discrepancy constitutes a material issue of fact that properly precluded summary judgment on the right to claim ownership of the improvements under those two contracts.

In sum, the Dock Board's motion to amend/clarify this Court's order of November 4th, 2008, should be denied because that order was decided appropriately based on the summary judgment record.  There remain significant issues of material fact as to the meaning and intent of the parties' language in the 1973 Amendment as they relate to the right to claim ownership of the improvements described in the Landis and Giambelluca contracts.  As such, there are no grounds for this Court to amend or clarify its prior order.  Accordingly,

**IT IS ORDERED** that the Dock Board's **Motion to Alter or Amend Judgment of November 4, 2008** (Rec. Doc. 110) is **DENIED.**

New Orleans, Louisiana this 19th day of December, 2008.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE